IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JANE DOE, proceeding under a pseudonym, | Case No. |
| | **1:25CV01957** DAE |
| Plaintiff | |
| v. | JURY TRIAL DEMANDED |
| **KIRKER DAVIS LLP**, CHRISTOPHER MICHAEL VINCENT KIRKER ESQ., HOLLY REBECCA DAVIS, ESQ., PAGE MOORE BROWN, ESQ., MEGAN ELIZABETH RAMIREZ, ESQ., JANET MCCULLAR, ESQ., CAROLINE KING MORRISON, ESQ., STEPHEN WILLIAM PAYNE, ESQ., ANTHONY F. BRIGANO, ESQ., ALYSE FAYE DONNELLY, ESQ., JORDAN HYDEN, MARIA SPINNICCI, HUNTER BRYANT, JULIE HILL, MIRANDA ZICCARDI, SONJA ST. CLAIR, CAITLIN GOLD, JESSICA C. COULOMBE, ESQ., | |
| **DEYERLE SILVA SMITH PLLC**, KODY CHARLES SILVA, ESQ., CHRISTIANE MINJI KIM, ESQ., MARIBELL GOMEZ, ESQ., PRISCILLA SABANCI, RACHEL ZINSMEYER, KATE KOSCHESKI, | |
| **WALTERS GILBREATH PLLC,** JAMES S. GILBREATH, ESQ., SARAH GILBREATH, CARAH-BETH BASS, ESQ., LAUREN E. SCOTT, ESQ., | |
| **LIEBMANN FAMILY LAW,** DAVID J. SOWERBUTTS, ESQ. | |
| **DIANA VILLARREAL** (aka DIANA CARRASCO, DIANA CARRASCO ROMERO), SERGIO CARRASCO, SIERRA CHRISTINA ROMERO, JOHN DOE and | |

JOHN DOE 1-50, and
JANE DOE 1-50,

        Defendants.

## PLAINTIFF'S ORIGINAL COMPLAINT
## AND REQUEST FOR INJUNCTION

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff proceeding under the pseudonym JANE DOE and appearing pro se, files this Complaint against all Defendants listed above, individually, and for causes of action would respectfully show as follows:

### I.    PARTIES

#### A. Defendant Groupings

1.    For clarity of pleading and to reflect the structure of both the Federal Wiretap Act and the RICO statutes, the Defendants are organized into three categories. These groupings are for organizational purposes only and do not limit the individual liability of any Defendant.

*Group 1*

2.    *Group 1* consists of individuals who directly recorded, procured, directed, encouraged, or otherwise participated in the creation of the recordings at issue in this lawsuit. Group 1 Defendants include:

- John Doe

- Diana Villarreal

- Any additional individuals later identified as having participated in the creation or

procurement of the recordings.

### *Group 2*

3.    *Group 2* consists of law firms, partners, attorneys, employees, and staff who used, disclosed, reviewed, analyzed, circulated, or otherwise possessed the recordings after having reason to know the interceptions were unlawful. Group 2 includes all individuals listed in the caption associated with:

- Kirker Davis LLP

- Deyerle Silva Smith PLLC

- Walters Gilbreath PLLC

- Liebmann Family Law

- Additional individuals affiliated with these firms whose identities will be determined during discovery.

- Estimated number of individuals in Group 2: minimum 20, maximum 100. These estimates will be refined through discovery.

### *Group 3*

4.    *Group 3* consists of individuals whose identities are currently unknown. These individuals may include additional attorneys, staff, litigation-support personnel, IT or records staff, or others who participated directly or indirectly in recording, storing, transmitting, analyzing, or using the recordings. These defendants are designated as:

- John Doe 1–50

- Jane Doe 1–50

5.    Plaintiff will amend the Complaint to substitute the true names when they become known through discovery.

### B. Plaintiff

6.      Plaintiff JANE DOE proceeds under a pseudonym for privacy and safety reasons pursuant to Federal Rule of Civil Procedure 5.2 and applicable federal authority.

## C. Defendants

7.      Defendants include the individuals and entities identified in the caption, all of whom reside or conduct business in the Western District of Texas or participated in acts giving rise to liability within this District.

## II.    JURISDICTION AND VENUE

8.      This action is brought pursuant to the Federal Wiretap Act 18 U.S.C. §§ 2510 et seq. (the "Federal Wiretap Act"), the Racketeer Influenced and Corruption Organizations Act, 18 U.S.C. §§ 1961 ("RICO"); and related Texas common law claims.

9.      This action is brought pursuant to the Federal Wiretap Act 18 U.S.C. §§ 2510 et seq. (the "Federal Wiretap Act"), [1] the Racketeer Influenced and Corruption Organizations Act, 18 U.S.C. §§ 1961 ("RICO"); and related Texas common law claims.

10.     This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including the Federal Wiretap Act and RICO.   This Court also has jurisdiction under 18 U.S.C. § 1964(c), which confers jurisdiction over civil RICO actions.

11.     This Court also has supplemental jurisdiction over the Plaintiff's state claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the federal claims that they form part of the same controversy under Article III of the United States Constitution.

12.     Personal jurisdiction exists over each Defendant because each Defendant resides in Texas,

---

[1] The Federal Wiretap Act and the Stored Communications Act are commonly used alternate names for Titles I and II of the Electronic Communications Privacy Act of 1986 (the "ECPA"), 18 U.S.C. §§ 2510-2712.

conducts substantial business in Texas, committed acts giving rise to liability in Texas, and/or purposefully directed acts toward Texas with the knowledge that the resulting harm would occur in this District.

13.     Venue is proper in the Western District of Texas, Austin Division, under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the possession, use, disclosure, distribution, and analysis of the unlawful recordings at issue.

### III.    NATURE OF THE ACTION

14.     This civil action arises from unlawful conduct committed by Plaintiff's former spouse, Defendant John Doe, together with multiple individuals and law firms who participated in a coordinated scheme to secretly intercept Plaintiff's private communications, steal and exploit more than twenty-five years of her confidential records, and weaponize this unlawfully obtained material for financial gain. These actions were taken outside any legitimate legal process and constitute repeated violations of federal law, including the **Federal Wiretap Act** and **civil RICO**.

15.     This lawsuit **does not** seek to modify, overturn, or revisit any state-court family-law judgment. Plaintiff seeks no domestic-relations relief of any kind.

16.     Rather, this case is based on independent federal statutory violations and other unlawful acts committed wholly outside the courtroom, including:

- the interception of Plaintiff's private telephone communications by John Doe and Diana Villarreal;

- the continued use, disclosure, and storage of the recordings by four law firms;

- unauthorized entry into Plaintiff's home and removal or photographing of her private

materials;

- interstate transmission and analysis of stolen information; and

- coordinated racketeering activity undertaken for financial benefit.

17.     These acts are not family-law disputes; they are criminal violations expressly prohibited by federal statutes. None require the Court to determine marital status, characterize property, or adjudicate any issue reserved to state family courts.

18.     The federal claims asserted here—including violations of the **Federal Wiretap Act** and **civil RICO**—are independent federal causes of action that do not disturb any state-court judgment. Plaintiff's related state-law tort claims arise from the same nucleus of facts and fall within this Court's supplemental jurisdiction.

19.     <u>**Attorney immunity does not protect the attorney defendants**</u>. The Texas Supreme Court has expressly held that state-law attorney immunity does not apply to federal statutory causes of action, because immunity is a state common-law defense and "does not override a contrary federal statute." *Taylor v. Tolbert*, 644 S.W.3d 637, 644–45 (Tex. 2022). Neither the Federal Wiretap Act nor civil RICO contain any attorney-immunity exception; both statutes impose liability on "any person" who engages in the prohibited conduct. *See* 18 U.S.C. §§ 2511, 2520; 18 U.S.C. §§ 1962, 1964. Courts consistently hold that attorneys may be civilly liable under RICO when they participate in, manage, or further a racketeering enterprise, and attorney immunity provides no defense to such federal claims. <u>**Accordingly, the attorney defendants cannot shield themselves with state-law immunity for their interception, use, disclosure, transmission, or exploitation of illegally obtained communications, nor for their knowing participation in racketeering activity.**</u>

20.     Plaintiff therefore seeks relief for unlawful interceptions, theft and trafficking in private information, extortionate misuse of confidential materials, and racketeering activity—conduct fully

actionable under federal law and wholly independent of any state-court proceeding. Defendants continue to possess and threaten to use Plaintiff's unlawfully obtained information, causing ongoing and irreparable harm.

## IV. FACTUAL BACKGROUND

### A.    The Scheme Begins: Concealment, Parallel Household and Asset-Diversion Planning

21.    Plaintiff and Defendant John Doe were married on October 28, 2017. By July 2022, Doe had secretly established a parallel household in Pennsylvania with Defendant Diana Villarreal while telling Plaintiff he was traveling for business. By December 2022, Doe and Villarreal were publicly engaged, though Plaintiff remained unaware of the affair or the parallel household.

22.    In late January and early February 2023, Doe—while still married to Plaintiff—executed trust instruments transferring major marital assets into structures controlled by Villarreal and her family. Plaintiff was not informed or included. These transfers were part of Defendants' efforts to conceal property, obscure ownership, and position themselves to deprive Plaintiff of her rightful interests.

23.    The trust transfers formed the backdrop of the scheme, demonstrating Defendants' intent to divert property and their motive for obtaining and weaponizing Plaintiff's confidential information and unlawfully recorded communications.

### B.    Unlawful Entry into Plaintiff's Home and Theft of Personal Records

24.    On or about February 2, 2023, John Doe and Villarreal traveled from Pennsylvania to Texas and entered Plaintiff's rented residence without Plaintiff's knowledge or consent. While inside, they

went room to room gathering, photographing, and removing substantially all of **Plaintiff's personal and confidential records accumulated over more than twenty-five years**, including:

- tax returns,

- medical records,

- financial records,

- identification documents,

- educational records,

- confidential work materials,

- insurance records,

- cash,

- two laptop computers,

- external hard drives, and

- keys and access devices.

25.    Video recordings later produced by Kirker Davis LLP show John Doe and Villarreal inside Plaintiff's home handling these materials. None of the items were ever returned.

**C.    Secret Recording of Plaintiff's Conversations and Later Coercive Use**

26.    Between January 26 and February 4, 2023, immediately before the trust transfers and before filing for divorce, Doe—with Villarreal's participation and/or knowledge—**secretly recorded multiple telephone conversations with Plaintiff.** Plaintiff did not consent to being recorded and had no knowledge that the calls were being intercepted.

27.    During these calls, Doe intentionally steered discussions toward Plaintiff's private medical information, finances, and deeply personal topics—subjects Plaintiff would not have discussed had she known the conversations were being recorded.

28.    Plaintiff first discovered the existence of the recordings on November 29, 2023, when she accessed a Dropbox folder created and maintained by Kirker Davis LLP. By that time, **the recordings had been stored, circulated, reviewed, and used by multiple law firms for months.**

29.    The circumstances—including timing, content, manner of collection, and later use—show that the recordings were created and exploited for improper purposes, including obtaining Plaintiff's private information for strategic advantage, supporting sham trust transfers, influencing division of marital property, and creating leverage against Plaintiff through threats and coercive tactics.

### D.    Coordinated Scheme to Divert the Pennsylvania Property and Seize the Texas Property

30.    After secretly recording Plaintiff and unlawfully entering her home to remove and photograph more than twenty-five years of her private records, Defendants initiated a coordinated scheme to deprive Plaintiff of her property interests and secure financial advantage for themselves through concealment, coercion, and unlawful use of confidential information.

*Diversion and Dissipation of the Pennsylvania Property*

31.    On February 16, 2023, Doe filed for divorce. During discovery, Plaintiff learned for the first time of the trust instruments drafted with Sowerbutts that transferred the Pennsylvania residence to a trust controlled by Villarreal.

32.    On or about May 15, 2023, Villarreal sold the Pennsylvania property at a below-market price. Plaintiff received none of the proceeds. Records indicate that portions of the proceeds were used to pay outstanding legal fees owed to Defendants Sowerbutts, Kirker, and Silva, who were aware that Plaintiff had been excluded.

33.    The Pennsylvania transaction was the first execution of the scheme: remove assets from Plaintiff's reach, stabilize Doe financially, and use Plaintiff's stolen private information to weaken

her position.

### *Escalating Threats and Misuse of Stolen Information*

34.     Throughout 2023, Doe and his attorneys repeatedly used Plaintiff's stolen documents and unlawfully recorded communications to pressure Plaintiff to surrender her property claims. Doe warned Plaintiff he possessed "a lot of information" that would "cause her damage" if she did not comply with his demands. Attorneys at Kirker Davis LLP and Deyerle Silva Smith PLLC amplified these threats by suggesting the possibility of deportation, making accusations of IRS wrongdoing, and publicly demeaning Plaintiff with statements implying she was a "mail-order bride." These threats relied directly on unlawfully obtained information.

35.     Defendants' continued threats to disclose the unlawfully obtained recordings and stolen documents demonstrate a continuing threat of repeated criminal conduct—the hallmark of a RICO pattern.

### *Intensified Efforts to Seize the Texas Property*

36.     Once the Pennsylvania proceeds were diverted and used for attorney fees, Defendants shifted their focus to Plaintiff's Texas property—titled solely in Plaintiff's name and representing her primary remaining asset.

37.     Between February 2023 and mid-2024, Kirker Davis LLP and Deyerle Silva Smith PLLC, acting on Doe's behalf, filed multiple pleadings seeking (a) exclusive control of the Texas property and rental income; (b) authority to sell the property; (c) a constructive trust through an annulment theory; and (d) a notice of lis pendens encumbering the title.

38.     These efforts were undertaken with full knowledge that Plaintiff alone had paid the mortgage from her wages and that the Texas property was her principal asset under her management and control.

*Continuous, Interconnected Scheme*

39.     The diversion of the Pennsylvania property and the efforts to seize the Texas property were not independent events. They were sequential and deliberate steps in a unified plan to silence, intimidate, weaken, and dispossess Plaintiff by:

- stealing and photographing Plaintiff's private documents;

- unlawfully intercepting Plaintiff's communications;

- exploiting her private information to extort concessions;

- monetizing the Pennsylvania property; and

- aggressively targeting the Texas property once the first asset had been removed.

40.     The scheme remains ongoing, as Defendants continue to possess—and threaten further use or disclosure of—Plaintiff's unlawfully obtained private information and recordings.

### E.  Villarreal's Integral Role in the Scheme

41.     As a central participant in the enterprise, Villarreal did far more than assist with concealing Doe's parallel household. She played an active and indispensable role in the execution of the scheme to deprive Plaintiff of her property and obtain strategic leverage through unlawful means.

42.     Villarreal actively participated in the creation of both trust instruments, accepted appointment as "trustee," and ensured that Plaintiff was excluded as a beneficiary while adding her own adult children—who had no connection to Plaintiff—as beneficiaries. Villarreal then executed the deed conveying the Pennsylvania property at a below-market price and knew that the proceeds were being used to pay attorney fees incurred in the litigation strategy against Plaintiff.

43.     Villarreal was present for and participated in the unlawful recordings of Plaintiff's communications. After the divorce filing, she repeatedly used and disclosed information derived from those recordings to pressure, intimidate, and discredit Plaintiff.

44.    On March 8, 2024, Villarreal sent an email to Plaintiff and multiple third parties accusing Plaintiff of harassment and referencing the contents of the intercepted calls.

45.    On March 26, 2024, Villarreal filed a police report in Hays County, Texas, again referencing her knowledge of and presence during the recordings and their specific contents.

46.    Villarreal's actions—including her participation in the trust scheme, theft of Plaintiff's records, knowledge of the illegal recordings, and public disclosures—were deliberate steps in furtherance of the enterprise's purpose: to obtain control of Plaintiff's property and weaponize unlawfully obtained information to coerce Plaintiff into surrendering her rights.

F.    **Active and Coordinated Role of the Attorney Defendants in Planning and Executing the Scheme**

47.    The attorney defendants played central and indispensable roles in planning, executing, and sustaining the scheme to deprive Plaintiff of her property and weaponize unlawfully obtained information.

48.    Defendant Sowerbutts drafted the trusts instruments that excluded Plaintiff and transferred both properties to Villarreal's control. Kirker Davis LLP and Deyerle Silva Smith PLLC later produced the trust documents in discovery, confirming their knowledge of the trust scheme.

49.    On January 24, 2023—days before the illegal recordings and the unauthorized entry—Doe retained Kirker Davis LLP, naming Defendant Silva as counsel. Billing records show Doe met with Silva on February 6, 2023, immediately after the illegal entry and recording, for strategy discussions concerning trusts and property.

50.    Throughout 2023 and 2024, attorneys and staff at Kirker Davis LLP, Deyerle Silva Smith PLLC, and Walters Gilbreath PLLC repeatedly accessed, reviewed, circulated, and used the illegal recordings and Plaintiff's stolen private information, including maintaining them in firm-controlled

storage, referencing them in pleadings, and playing at least one recording in open court, despite written notice that the recordings were illegal.

51.    The attorney defendants engaged in **rabid and unlawful disclosure** of Plaintiff's private information, circulating the intercepted communications and stolen documents among firm personnel and using them strategically in litigation despite clear knowledge of their illegal origin.

52.    Doe and his attorneys repeatedly used this unlawful information to threaten Plaintiff with immigration consequences, IRS accusations, and reputational harm to coerce her into unfavorable concessions concerning property.

53.    These threats were an intentional strategy to weaken Plaintiff's bargaining position and force surrender of the Texas property, long after Plaintiff notified the attorneys that possession and use of the recordings violated the Federal Wiretap Act.

54.    The **dissolution litigation generated over $900,000 in combined legal fees**, creating powerful financial incentives for the attorney defendants to secure control of Plaintiff's assets.

55.    The retainer agreements for Kirker Davis LLP and Deyerle Silva Smith PLLC permitted recovery of unpaid fees from any property awarded to Doe in the divorce, giving the firms a direct financial interest in obtaining the Texas property.

56.    The attorneys' drafting of unauthorized trusts, immediate strategy meetings following the illegal entry and recordings, repeated misuse of stolen information, and aggressive filings targeting Plaintiff's last remaining property demonstrate a shared and coordinated purpose, and show their active participation in operating and managing the enterprise.

### G. Marriage Dissolution Proceedings

57.    The marriage dissolution proceedings between Plaintiff and Defendant John Doe took place in Travis County, Texas. A jury trial on Defendant Doe's annulment claim occurred on July 22, 2024,

followed by a bench trial on property division on August 25, 2024. The trial court entered judgment

in January 2025. Plaintiff timely filed a Notice of Appeal, and the appeal remains pending before the

Texas Third Court of Appeals. These state proceedings do not address—and cannot resolve—the

independent federal statutory violations and tortious conduct asserted in this action.

## V. CAUSES OF ACTION

### Count One – Violations of the Federal Wiretap Act
### (against all Defendants)

58.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

59.     Defendants John Doe and Villarreal intentionally intercepted Plaintiff's private telephone

conversations without her knowledge or consent, in violation of the Federal Wiretap Act, 18 U.S.C.

§§ 2510–2520.

60.     The interceptions were made with the intent to commit criminal and tortious acts, as described

in 18 U.S.C. § 2511(2)(d). Defendants John Doe and Villarreal intentionally intercepted and recorded

Plaintiff's communications for the purpose of committing criminal and tortious acts independent of

the interception itself, including but not limited to extortion, fraud, community-property theft, and the

use of confidential personal and medical information to obtain an unfair financial advantage in the

marriage-dissolution proceedings.

61.     Defendants, including the attorney defendants and their law-firm employers, willfully

disclosed, used, circulated, stored, or attempted to use the contents of the unlawfully intercepted

communications, knowing or having reason to know that such communications had been obtained in

violation of the Federal Wiretap Act.

62.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered harm including

the loss of property interests, financial damages associated with responding to and mitigating the unlawful disclosures, and the accumulation of legal fees and expenses necessitated solely by Defendants' unlawful acts.

63.     Pursuant to 18 U.S.C. § 2520, Plaintiff seeks the following relief:

- Equitable relief, including an injunction prohibiting further use or disclosure of the intercepted communications (§ 2520(b)(1));

- Actual damages or statutory damages, including the $100-per-day statutory minimum or $10,000 per violation (§ 2520(c));

- Punitive damages for Defendants' willful and intentional violations (§ 2520(b)(2)); and

- Reasonable attorney's fees and litigation costs (§ 2520(a)).

### Count Two – RICO (Racketeer Influenced and Corrupt Organizations Act)
*(against all Defendants)*

64.     Plaintiff incorporates by reference each and every preceding paragraph as if fully restated herein.

65.     Defendants pursued a common course of conduct and acted jointly and severally in furtherance of a coordinated plan to obtain property from Plaintiff, conceal marital assets, manipulate legal proceedings, and use illegally obtained communications to gain financial advantage. Each Defendant aided, abetted, facilitated, or assisted the others in the unlawful acts described herein.

### The Enterprise

66.     Defendants constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4),

consisting of an association-in-fact among:

- the individual defendants (John Doe, Diana Villarreal, and others),

- the four law-firm defendants (**KIRKER DAVIS LLP, DEYERLE SILVA SMITH PLLC, WALTERS GILBREATH PLLC, LIEBMANN FAMILY LAW**), and

- the attorney, staff, and managerial agents who acted in concert.

67.     The Enterprise functioned as a continuing unit from at least January 2023 to the present.

68.     This Enterprise existed for the common purpose of obtaining money and property from Plaintiff, protecting the unlawful conduct of its members, and using the illegally obtained recordings and stolen information to influence legal proceedings. The Enterprise engaged in— and its activities affected—interstate commerce.

## *Conduct of the Enterprise's Affairs*

69.     Each Defendant participated, directly or indirectly, in the operation or management of the Enterprise's affairs through a pattern of racketeering activity. Defendants directed, controlled, or knowingly facilitated the Enterprise's unlawful objectives.

## *Pattern of Racketeering Activity*

70.     Defendants engaged in a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5), including multiple acts of racketeering occurring within ten years. These acts were related in purpose, participants, method, and results, and they pose a continued threat of ongoing criminal conduct.

*The Racketeering Activity*

71.    The specific acts of racketeering activity ("predicate acts") engaged in by Defendants, within the meaning of 18 U.S.C. § 1961(1), include, but are not limited to the following:

- **Violation of the Federal Wiretap Act** (18 U.S.C. §§ 2510-2522). Defendants John Doe and Villarreal unlawfully intercepted Plaintiff's telephone conversations without her knowledge or consent. The attorney defendants and their law firms—including Kirker Davis LLP, Deyerle Silva Smith PLLC, Walters Gilbreath PLLC, and Liebmann Family Law—used, disclosed, circulated, stored, and possessed the recordings with knowledge, or reason to know, that the recordings were illegally obtained.

- **Extortion under the Hobbs Act** (18 U.S.C. § 1951). Defendants Doe, Villarreal, Kirker, and Silva used threats of exposing private information—including contents of the illegal recordings—to coerce Plaintiff into surrendering property interests and financial concessions during the marriage dissolution proceedings.

- **Wire Fraud** (18 U.S.C. § 1343). Defendants used interstate electronic communications (including emails, Dropbox transmissions, and electronic productions) to execute a scheme to defraud Plaintiff of marital property and to conceal the sham trust transfers.

- **Mail Fraud** (18 U.S.C. § 1341). Defendants used interstate mail and electronic document transmission to further a fraudulent scheme, including transmitting trust instruments, financial documents, and litigation materials designed to conceal assets and deprive Plaintiff of community property.

- **Interstate Communications with Intent to Extort** (18 U.S.C. § 875(d)). Defendants used

interstate communications—including emails, calls, and electronic messaging—to threaten disclosure of private information in order to obtain money and property from Plaintiff.

- **Violation of the Travel Act** (18 U.S.C. § 1952). Defendants John Doe and Villarreal traveled from Pennsylvania to Texas with the intent to commit theft, extortion, fraud, and other unlawful acts, and thereafter carried out or attempted to carry out those unlawful acts.

*Proximate Cause*

72.    Plaintiff's injuries were directly and proximately caused by Defendants' pattern of racketeering activity. But for the predicate acts—including illegal recordings, extortionate threats, undisclosed transfers, and interstate transportation of stolen property—Plaintiff would not have sustained the financial losses described herein.

*Injury to Business or Property*

73.    Plaintiff has suffered actual harm to her business or property due to the Defendants' actions, including but not limited to:

- Costs and legal fees incurred in responding to Defendants' actions and extortionate threats, including fees necessitated by the use and disclosure of illegally obtained recordings;

- Costs associated with replacing stolen property, including laptops, documents, and keys.

*Count Three – Civil Conspiracy*
*(against all Defendants)*

74.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

75.     Defendants entered into a combination and agreement to accomplish one or more unlawful purposes, including depriving Plaintiff of her property rights, concealing marital assets, misappropriating Plaintiff's confidential information, and using unlawfully obtained materials to coerce Plaintiff into financial concessions.

76.     Defendants had a meeting of the minds to pursue this unlawful objective. The agreement may be inferred from Defendants' coordinated actions, communications, and unified efforts to carry out the scheme.

77.     In furtherance of the conspiracy, Defendants committed one or more unlawful overt acts, including but not limited to:

- invasion of privacy;

- conversion and theft of Plaintiff's property and documents;

- use and disclosure of illegally obtained recordings; and

- publication of false statements and accusations concerning Plaintiff.

78.     Defendants' acts were committed in furtherance of the conspiracy and were a proximate cause of Plaintiff's injuries, including loss of property, diminution of property rights, legal expenses, and other financial harms.

79.     As a direct result of the conspiracy, Plaintiff suffered damages. Under Texas law, all Defendants are jointly and severally liable for the acts committed by any member of the conspiracy. Plaintiff seeks compensatory damages, punitive damages, and attorney's fees and costs to the extent permitted by law.

### Count Four – Unjust Enrichment
*(Against John Doe, Villarreal, the Law Firm Defendants, the Attorney Defendants, and Does 1–50)*

80.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

81.    Defendants obtained money, property, and other financial benefits through wrongful means, including the misuse of Plaintiff's confidential and personal information, the exploitation of unlawfully acquired materials, extortionate threats, undisclosed property transfers, and other unlawful acts described herein.

82.    Defendants were unjustly enriched by their use and exploitation of information unlawfully obtained from Plaintiff, including information derived from the unauthorized intrusion into her home and the acquisition of private documents and data.

83.    Defendants benefitted financially from a coordinated scheme to misuse and weaponize confidential and unlawfully obtained information for strategic and financial advantage, including efforts to pressure Plaintiff into surrendering property rights and financial concessions.

84.    The law-firm defendants—**KIRKER DAVIS LLP, DEYERLE SILVA SMITH PLLC, WALTERS GILBREATH PLLC, and LIEBMANN FAMILY LAW**—and their attorneys received fees, payments, or other financial benefits that were directly or indirectly obtained through unlawful conduct, including the use of confidential information wrongfully taken from Plaintiff and proceeds derived from trust instruments executed without Plaintiff's knowledge and used as part of the concealment and diversion scheme.

85.    Defendants knowingly accepted and retained these financial benefits under circumstances that make their retention inequitable and unjust, as the benefits were derived from wrongful conduct and

were not earned through lawful means.

86.    It would be unconscionable for Defendants to retain the money, benefits, and property obtained through their wrongful actions.

### Count Five – Intentional Infliction of Emotional Distress
### (against Villarreal, John Doe, and Does 1-50)

87.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

88.    Defendants engaged in intentional and wrongful conduct directed at Plaintiff, including but not limited to: the unauthorized interception and disclosure of Plaintiff's private communications, the theft and dissemination of her confidential information, the use of unlawfully obtained materials to threaten, coerce, or intimidate Plaintiff, and the repeated public exposure of private matters for strategic advantage.

89.    Defendants' conduct, individually and collectively, was extreme and outrageous and exceeded all possible bounds of decency. Such actions would be regarded as atrocious and utterly intolerable in a civilized community.

90.    Defendants knew or should have known that their conduct would cause Plaintiff severe emotional distress, and they acted with the intent to cause such distress or with reckless disregard for the near certainty that such distress would occur.

91.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress, including anxiety, depression, humiliation, emotional anguish, loss of sleep, and significant psychological harm.

92.    To the extent this cause of action does not duplicate relief available under other tort theories

and serves as a gap-filler for the emotional injuries caused by Defendants' extreme and outrageous conduct, Plaintiff seeks all damages allowed by law, including compensatory and punitive damages.

93.     This cause of action is pleaded in the alternative and applies only to conduct not fully remedied by other tort theories.

### *Count Six – Invasion of Privacy*
*(against Villarreal, John Doe, and Does 1-50)*

94.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

95.     Defendants Villarreal and Does 1–50 intentionally intruded upon Plaintiff's solitude, seclusion, and private affairs by unlawfully entering Plaintiff's home and private living space, and by accessing, reviewing, and photographing Plaintiff's highly personal and confidential information, including medical, financial, and identifying records, without her consent. Plaintiff had a reasonable expectation of privacy in her home and in her personal information. The intrusion was highly offensive.

96.     Defendants Villarreal and Does 1–50 also publicly disclosed private facts about Plaintiff, including information obtained during the unauthorized entry and from the unlawfully intercepted recordings. These disclosures were highly offensive and not of legitimate public concern.

97.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including mental anguish, humiliation, emotional distress, reputational harm, financial losses, and related harms.

98.     Plaintiff seeks all damages allowed by law, including compensatory and punitive damages.

## VI. REQUEST FOR RELIEF

Plaintiff respectfully requests that the Court enter judgment in her favor and grant the following relief:

### A. Declaratory Relief

A declaration that Defendants' possession, use, and disclosure of Plaintiff's private information, documents, and recordings violates federal law.

### B. Injunctive Relief

Issue temporary and permanent injunctive relief enjoining Defendants—together with their officers, agents, employees, attorneys, and all persons acting in concert with them—from:

1. Using, disclosing, publishing, disseminating, or relying upon any unlawfully intercepted audio recordings, video recordings, documents, or information taken from Plaintiff or her residence.

2. Accessing, storing, circulating, or retaining any such materials in any form.

3. Requiring the immediate return and certified deletion of all copies—physical, electronic, or derivative—of:

- Audio recordings and their contents;

- Video recordings and their contents;

- Plaintiff's documents or images of documents;

- Any private facts or information derived from the foregoing.

4. Prohibiting further use or disclosure of any private facts obtained from the unlawful interceptions, unlawful entry, or stolen materials.

### C. Federal Wiretap Act Damages (18 U.S.C. § 2520)

Award Plaintiff:

1. Statutory or actual damages, whichever is greater, including:

- $100 for each day of violation for each recording or disclosure; or

- $10,000 per violation, whichever is greater.

2. Punitive damages as authorized by statute.

3. Suppression of all unlawfully obtained materials in any judicial, administrative, or arbitration proceeding.

### D. RICO Relief (18 U.S.C. § 1964(c))

Award Plaintiff:

1. Treble damages for injury to her business or property.

2. Equitable relief, including a constructive trust over proceeds or assets wrongfully obtained.

3. An injunction prohibiting Defendants from further racketeering activity.

### E. Damages Under State-Law Causes of Action

Award Plaintiff damages for:

- Civil conspiracy,

- Unjust enrichment,

- Intentional infliction of emotional distress, and

- Invasion of privacy,

including actual damages, exemplary (punitive) damages, and all other relief available under Texas law.

### F. Attorneys' Fees and Costs

Award Plaintiff:

- Attorneys' fees and litigation costs pursuant to the Federal Wiretap Act, 18 U.S.C. § 2520(a);

- Alternatively, or additionally, attorneys' fees under RICO, 18 U.S.C. § 1964(c);

- Court costs, investigation costs, and all recoverable expenses.

### G. Interest

Award Plaintiff pre-judgment and post-judgment interest at the maximum rate allowed by law.

### H. General Relief

Award Plaintiff all other legal and equitable relief to which she may be justly entitled.

## VII. Certification

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully submitted,

DATED: December 1, 2025

**/s/ Jane Doe**
_____

**JANE DOE**
Plaintiff, Pro Se
Proceeding under pseudonym
Address omitted pursuant to Fed. R. Civ. P. 5.2
Email: legalnotices205@yahoo.com